UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

TODD TURCOTTE,
    *Plaintiff,*

v.

COMMISSIONER OF SOCIAL SECURITY,
    *Defendant.*

No. 3:17-cv-1981 (JAM)

# RULING ON CROSS MOTIONS TO REMAND AND AFFIRM DECISION OF THE COMMISSIONER OF SOCIAL SECURITY

Plaintiff Todd Turcotte asserts that he is disabled and has brought this action pursuant to 42 U.S.C. § 405(g), seeking review of the final decision of defendant Commissioner of Social Security denying Turcotte's disability claim. For the reasons discussed below, I will deny Turcotte's motion to remand the decision of the Commissioner (Doc. #23), and grant the Commissioner's motion to affirm (Doc. #24).

## BACKGROUND

The Court refers to transcripts provided by the Commissioner. *See* Doc. #15-1 through Doc. #15-13. Turcotte filed an application for social security insurance on October 1, 2014, alleging disability beginning January 1, 2014. Doc. #15-4 at 3–4. Turcotte was 49 years old at the time of his application. *Id.* at 3. He left school in the eighth grade and does not have a GED. Turcotte was self-employed as a carpenter in residential construction from 2010 to 2013. He was not working when he filed his initial claim for disability. *Id.* at 4.

Turcotte's current claim for supplemental security income was denied initially and upon reconsideration. *Id.* at 14, 31. He then appeared and testified before Administrative Law Judge (ALJ) Alexander Borre on March 7, 2017. Doc. #15-3 at 47. Turcotte was represented before the

ALJ by an attorney representative. *Ibid.* A vocational expert also testified at the hearing. *Ibid.* On April 5, 2017, the ALJ issued a decision holding that Turcotte was not disabled within the meaning of the Social Security Act. *Id.* at 19–36. Turcotte applied to the Appeals Council for review of the ALJ's decision and submitted additional evidence from March 22, 2017, through March 29, 2017, to support his claim for disability with his application. *Id.* at 10–18. The Appeals Council did not consider the additional evidence because it "[did] not show a reasonable probability that it would change the outcome of the decision." *Id.* at 3. The Appeals Council denied Turcotte's request for review on July 7, 2017, and he then filed this federal action. *Id.* at 8–9.

To qualify as disabled, a claimant must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months," and "the impairment must be 'of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.'" *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 45 (2d Cir. 2015) (quoting 42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A)). "[W]ork exists in the national economy when it exists in significant numbers either in the region where [a claimant] live[s] or in several other regions of the country," and "when there is a significant number of jobs (in one or more occupations) having requirements which [a claimant] [is] able to meet with [his] physical or mental abilities and vocational qualifications." 20 C.F.R. § 416.966(a)–(b); *see also Kennedy v. Astrue*, 343 F. App'x 719, 722 (2d Cir. 2009).

To evaluate a claimant's disability, and to determine whether he qualifies for benefits, the agency engages in the following five-step process:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. Where the claimant is not, the Commissioner next considers whether the claimant has a "severe impairment" that significantly limits [his] physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment that is listed [in the so-called "Listings"] in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant has a listed impairment, the Commissioner will consider the claimant disabled without considering vocational factors such as age, education, and work experience; the Commissioner presumes that a claimant who is afflicted with a listed impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, [he] has the residual functional capacity to perform [his] past work. Finally, if the claimant is unable to perform [his] past work, the burden then shifts to the Commissioner to determine whether there is other work which the claimant could perform.

*Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122–23 (2d Cir. 2012) (alteration in original) (citation omitted); *see also* 20 C.F.R. § 416.920(a)(4)(i)–(v). In applying this framework, an ALJ can find a claimant to be disabled or not disabled at a particular step and can make a decision without proceeding to the next step. *See* 20 C.F.R. § 416.920(a)(4). The claimant bears the burden of proving the case at steps one through four; at step five, the burden shifts to the Commissioner to demonstrate that there is other work that the claimant can perform. *See McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014).

The ALJ here concluded that Turcotte was not disabled within the meaning of the Social Security Act. At step one, the ALJ determined that Turcotte had not engaged in substantial gainful activity since October 1, 2014. Doc. #15-3 at 24. At step two, the ALJ found that Turcotte suffers from the following severe impairments: hepatitis C, left shoulder tear, left knee osteoarthritis, degenerative disk disease, depressive, bipolar and related disorders, post-traumatic stress disorder (PTSD), and chronic obstructive pulmonary disease (COPD). *Ibid.* The ALJ

3

determined two of Turcotte's other impairments to be non-severe impairments, including carpal tunnel syndrome and peripheral neuropathy. *Ibid.*

At step three, the ALJ determined that Turcotte did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 25.

At step four, the ALJ found that plaintiff had "the residual functional capacity to perform light work as defined in 20 C.F.R. [§] 416.967(b)," but with the following limitations: Turcotte "can occasionally climb ramps and stairs, but never ladders, ropes or scaffolds. [Turcotte] cannot tolerate exposure to hazards, such as unprotected heights or open, moving machinery. He can frequently balance and occasionally stoop, kneel, crouch, and crawl." *Id.* at 28. In addition, Turcotte "is limited to simple and repetitive tasks in an environment with no strict time or production requirements [and] he can occasionally interact with the public." *Ibid.* The ALJ further determined that Turcotte "can have no exposure to dust, gas, fumes and other environmental irritants[, and he] can do frequent fingering and handling bilaterally and can occasionally reach overhead with his left upper non-dominant extremity." *Ibid.*

In formulating this residual functional capacity (RFC), the ALJ gave "partial weight" to the medical opinions of all four state agency medical consultants, while giving "little weight" to the medical opinion of both of Turcotte's mental health evaluators and one of Turcotte's health record evaluators. *Id.* at 34. The ALJ also found Turcotte's testimony about his symptoms to be only partially credible. Specifically, the ALJ found that "[m]edical evidence reflects the stabilization of [Turcotte's] symptoms with treatment, and supports an ability to work within the residual functional capacity" articulated by the ALJ. *Id.* at 29. In addition, the ALJ found that

4

"statements concerning the intensity, persistence and limiting effects of [his] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." *Ibid.*

At step five, after considering Turcotte's age, education, work experience, and RFC, the ALJ concluded that jobs that Turcotte can perform exist in significant numbers in the national economy. *Id.* at 33. This finding relied on the testimony of vocational expert Hank Lerner, who testified at the administrative hearing that an individual with plaintiff's RFC and limitations (as determined by the ALJ) could perform the requirements of representative occupations such as pre-assembler printed circuit board, production assembler, and compression molding machine tender. *Id.* at 36, 84–85. The ALJ ultimately concluded that Turcotte was not disabled within the meaning of the Social Security Act. *Id.* at 36.

After reviewing the record below and the additional evidence submitted by Turcotte, the Appeals Council denied his request for review on October 11, 2017. *Id.* at 2–4. Turcotte subsequently filed this federal action in November 2017, asking this Court to reverse the Commissioner's decision or remand the case for rehearing. In response, the Commissioner has moved to affirm her decision.

## DISCUSSION

The Court may "set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by substantial evidence or if the decision is based on legal error." *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008); *see also* 42 U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lesterhuis v. Colvin*, 805 F.3d 83, 87 (2d Cir. 2015) (*per curiam*). Absent a legal error, the Court must uphold the Commissioner's decision if it is supported by substantial evidence and even if the Court might

5

have ruled differently had it considered the matter in the first instance. *See Eastman v. Barnhart*, 241 F. Supp. 2d 160, 168 (D. Conn. 2003).

Turcotte argues that the ALJ erred in two respects. First, Turcotte argues that the the ALJ's RFC finding is not supported by substantial evidence. Second, Turcotte argues that the ALJ erred in relying on the opinions of state agency consultants in reaching his RFC finding.

### *Substantial evidence for the RFC finding*

It is well-established that a calculation of RFC must be based on the medical record and not on the ALJ's lay opinion. *See Burgess*, 537 F.3d at 131. In calculating the RFC, "an ALJ is not required to discuss every piece of evidence submitted," and "[a]n ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (*per curiam*). But the ALJ's RFC determination must include "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e.g.*, laboratory findings) and nonmedical evidence (*e.g.*, daily activities, observations)." SSR 96-8, 1996 WL 374184 (1996). The RFC finding "need only afford an adequate basis for meaningful judicial review, apply the proper legal standards, and be supported by substantial evidence such that additional analysis would be unnecessary or superfluous." *McIntyre*, 758 F.3d at 150 (internal quotation marks and citation omitted).

Turcotte claims that "the ALJ did not explain how he reached the conclusion that Turcotte is able to perform the duties of light work" and that the ALJ did not explain how he determined Turcotte's functional limitations. Doc. #23-1 at 4. According to Turcotte, his "medical records demonstrate that [he] has a constellation of physical impairments resulting from years of heavy work as a roofer." *Id.* at 5. Turcotte further argues that the medical evidence

on the record is "consistent with [his] testimony at the hearing" and that "the ALJ repeatedly disregarded portions of the medical record" in determining Turcotte's RFC. *Id.* at 6–7.

I conclude that substantial evidence supported the ALJ's RFC finding. The ALJ thoroughly assessed the evidence on the record and considered Turcotte's testimony before he concluded that Turcotte had the capacity to perform light work. Doc. #15-3 at 28–35. Where the ALJ found a discrepancy between the medical evidence and Turcotte's testimony, the ALJ was entitled to resolve that discrepancy. *See Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971)). For example, Turcotte testified extensively as to difficulties he experienced with mobility because of neck and back pain, *id.* at 55–58; the ALJ acknowledged Turcotte's subjective description of his pain, *id.* at 28, but then offered evidence from the medical record that contradicts Turcotte's testimony. *Ibid.* ("Treatment notes from Dr. Kolker on May 19, 2015, indicated that the claimant was stable on his pain medication. On physical examination, he observed that the claimant was well-nourished, well developed, alert, in no acute distress, and his appearance was well tended.").[1]

Based on his evaluation of Turcotte's medical record in conjunction with subjective testimony as to Turcotte's experience of his symptoms, the ALJ permissibly concluded that Turcotte had the RFC to perform light work. Although Turcotte reported in his testimony that the medical issues he experienced limited his mobility, *id.* at 54–58, the ALJ permissibly concluded

---

[1] *See also, e.g.*, Doc. #15-8 at 14 (noting, on February 7, 2013, "[t]his patient comes in today for reevaluation of left knee pain. . . . He has noted some intermittent popping and swelling but feels that his pain is improved. When he is resting, he is nearly pain-free"); Doc. #15-9 at 122 (noting, on March 25, 2015, "[patient] comes in complai[n]ing of the diffuse pain in the low back with a score of 7/10 and with the meds 4/10"); Doc. #15-11 at 84 (noting, on November 24, 2015, that Turcotte "comes in complaining of continued pain . . . pain went from an 8 to a 4 with meds"). *But see* Doc. #15-10 at 4 (noting on January 2, 2014, that Turcotte "presents for evaluation of low back pain. The pain developed gradually years ago. It is extreme (9-10/10), has an aching quality and does not radiate. . . . He has been previously treated with physical therapy, NSAIDs, and bedrest. The physical therapy was ineffective in relieving the pain."). While there is some evidence like the record of January 2, 2014, that shows that Turcotte's experience of pain fluctuates and is unpredictable, there was substantial evidence for the ALJ to conclude that his pain is still manageable with a regimen of medication and other physician-recommended treatments.

7

that Turcotte's medical records supported a finding that Turcotte's pain is manageable when he receives treatment from a physician and medication to mitigate his symptoms, *id.* at 35. The ALJ's determination of Turcotte's RFC was supported by substantial evidence.[2]

### *Reliance on state agency consultants*

Acknowledging that the record does not contain a treating medical source statement concerning his RFC limitations, plaintiff faults the ALJ's reliance on the opinions of state agency consultants. It is well established that "[t]he ALJ, unlike a judge in a trial, must [himself] affirmatively develop the record," considering "the essentially non-adversarial nature of a benefits proceeding." *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999). The ALJ has a duty "to investigate and develop the facts and develop the arguments both for and against the granting of benefits." *Vincent v. Comm'r of Soc. Sec.*, 651 F.3d 299, 305 (2d Cir. 2011). This duty arises from the Commissioner's regulatory duty to develop a complete medical record before making a disability determination, 20 C.F.R. § 404.1512(d)–(f), and exists even when, as here, the claimant is represented by counsel at the administrative hearing. *See Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1999); *see also Evans v. Comm'r of Soc. Sec.*, 110 F. Supp. 3d 518, 537 (S.D.N.Y. 2015).

On the other hand, the duty to develop the record is not limitless. "[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information . . . ." *Rosa*, 168 F.3d at 79 n.5 (internal quotation marks and citation omitted). In order to fully develop the

---

[2] The Second Circuit has discounted testimonial evidence of pain where the medical record showed that the claimant was able to manage the pain with medication and other forms of physician-supported treatment. *See, e.g.*, *Koch v. Colvin*, 570 F. App'x 99, 102–03 (2d Cir. 2014) (discounting a claimant's subjective account of pain she experienced where the medical record showed improvement in her condition with treatment); *Poupore v. Astrue*, 566 F.3d 303, 307 (2d. Cir. 2009) (same).

8

record, a medical source statement is not necessarily required, so long as "the record contains sufficient evidence from which an ALJ can assess the [claimant's] residual functional capacity." *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 34 (2d Cir. 2013).

Here, there were no obvious gaps in the record to necessitate the ALJ's seeking a treating medical source statement. Doc. #15-3 at 28–35. I similarly find that, given the extensive record the ALJ considered in making his RFC determination, the ALJ did not err by by failing to acquire a medical source statement from Turcotte's treating physicians and by relying in part on state agency medical consultants in conjunction with a review of medical records.

### *The Appeals Council's Decision*

Turcotte alleges that the Appeals Council erred in refusing to review the medical evidence that he submitted in support of his request for review. "The Appeals Council will review a case if . . . [it] receives additional evidence that is new, material, and relates back to the period on or before the date of the hearing decision[.]" 20 C.F.R. § 416.1470(a)(5). In addition, the Appeals Council requires that "there is a reasonable probability that the additional evidence would change the outcome of the [ALJ's] decision." *Ibid.*

"[N]ew evidence submitted to the Appeals Council following the ALJ's decision becomes part of the administrative record for judicial review when the Appeals Council denies review of the ALJ's decision." *Perez v. Chater*, 77 F.3d 41, 45 (2d Cir. 1996). When the Appeals Council denies review of an ALJ decision, "the ALJ's decision becomes the Secretary's final decision." *Id.* at 44; 20 C.F.R. §§ 404.981, 416.1481. Therefore, the role of this Court when the Appeals Council denies review is to "review the entire administrative record," including the new evidence, and "determine . . . whether there is substantial evidence to support the decision of the [Commissioner]." *Perez*, 77 F.3d at 46.

9

Turcotte submitted six reports as additional evidence for review by the Appeals Council. The first report discussed a Magnetic Resonance Imaging (MRI) scan on March 23, 2017, of Turcotte's cervical spine. Doc. #15-3 at 10–11. Dr. Dueker, the physician who reviewed the scans at William W. Backus Hospital, concluded that the scans showed "[m]oderate to severe cervical spondylosis" and "[c]ervical straightening," but also that the scans showed "[n]o acute cervical abnormality." *Id.* at 11. The second report, also from March 23, 2017, compares a contemporaneous lumbar MRI with MRIs of the same region from May 2015 and May 2009. *Id.* at 12–13. Dr. Dueker concluded that the March 2017 scan showed "[m]oderate lumbar degenerative disc and facet disease" and "[n]o acute abnormality or malignment." *Id.* at 13.

On the same day in March 2017, Turcotte also had an MRI scan taken of his thoracic spine in response to a history of reported chronic thoracic pain. *Id.* at 14. Based on that scan, Dr. Burch at Backus Hospital concluded that Turcotte's scan showed "[n]o significant change" from a scan taken in October 2014. *Ibid.* The fourth report, made on March 29, 2017, discusses an x-ray of Turcotte's spine, concluding that though "no fracture is seen" and "no prevertebral soft tissue swelling is seen," Turcotte's exam showed "cervical degenerative changes." *Id.* at 16. The fifth report, also from March 29, discusses an x-ray of Turcotte's lumbosacral spine, similarly concluding that, though "vertebral body heights are normal," and "there is no fracture or other bony abnormality," the scan showed "lumbar degenerative changes." *Id.* at 17.

The sixth report, also from March 29, discussed an x-ray of Turcotte's thoracic spine, which showed "normal vertebral alignment" and "thoracic degenerative changes." *Id.* at 18. The fourth, fifth, and sixth reports were all evaluated by Dr. Kohanski at the Backus Hospital.

The Appeals Council determined that the new evidence "[did] not show a reasonable probability that it would change the outcome of the decision" below. *Id.* at 3. Each of the reports

10

Turcotte submitted as additional evidence related to his claims that he experienced chronic neck, lumbar (lower-back), and thoracic (upper-back) pain. *Id.* at 10–18. The record that the ALJ reviewed during the administrative hearing, as to Turcotte's claims that he experienced neck and back pain, seemed to indicate that Turcotte was managing his pain with medication. *See, e.g.*, Doc. #15-3 at 31 ("Treatment notes from Dr. Kolker on December 1, 2016, indicated that [ ] his pain was a three out of ten when he was receiving treatment."); *see also* Doc. #15-13 at 2 (showing that during a doctor's appointment on December 1, 2016, Turcotte indicated that he felt pain at a level of two or three, with a high of seven and a low of two in the 30 days preceding his appointment); *id.* at 15 (showing that during a doctor's appointment on December 29, 2016, Turcotte reported experiencing pain at a level of seven (on a scale of one to ten) when untreated, but his pain was a level of three when treated and five on average).

As the ALJ noted in his decision, Turcotte's pain seems to be manageable with medication. So, even though the new evidence that Turcotte submitted suggests certain degrees of degeneration to his cervical, lumbar, and thoracic spine regions, it is not clear based on the record before this Court that Turcotte will be unable to continue to manage his pain with medication as he indicated he did in the past. Given this lack of clarity, I find that even with the addition of the new evidence to the administrative record, there is still substantial evidence to support the ALJ's decision, and the Appeals Council did not abuse its discretion when concluding that the new evidence did not give rise to a reasonable probability of a change of decision. Therefore, the Appeals Council did not err when it did not grant review of Turcotte's case on the basis of new evidence submitted.

## CONCLUSION

For the foregoing reasons, the motion to reverse the decision of the Commissioner

(Doc. #23) is DENIED, and the motion to affirm the decision of the Commissioner (Doc. #24) is GRANTED. The Clerk of Court shall close this case.

Dated at New Haven this 21st day of November 2018.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge